**SO ORDERED.**

**SIGNED this 02 day of May, 2012.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION**

IN RE:

| | |
|---|---|
| KRAIG ALAN LONG, | CHAPTER 13 |
| NANCY JO LONG, | CASE NO.  11-05070-8-RDD |
| DEBTORS | |

### ORDER GRANTING MOTION FOR SECTION 362(k) SANCTIONS

Pending before the Court is the Motion for Sanctions and Damages for Violation of 11 U.S.C. § 362 and Damages in a Core Proceeding filed by Kraig Alan Long and Nancy Jo Long (the "Debtors") on February 25, 2012 (the "Motion for Sanctions").  The Court conducted a hearing on April 24, 2012 in Greenville, North Carolina to consider the Motion.

### BACKGROUND

The Debtors filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on July 1, 2011.  Prior to filing the bankruptcy petition, the Mrs. Long contracted with Piedmont Equine Associates, Inc. ("Piedmont") to provide veterinary services for her daughter's horse. Prepetition, Piedmont billed Mrs. Long for these services in the amount of $681.66.  Mrs. Long failed to pay the debt, and Piedmont turned the account over to Madison Credit

Bureau Associates, Inc., ("Madison") in an effort to collect on the debt. Madison was to receive a percentage of the amount collected.

The creditor matrix attached to the Debtors' petition lists "Piedmont Equine Assoc., ATTN: Managing Agent or Officer, PO Box 1373, Madison, GA 30650." Additionally, the creditor matrix lists "Madison Credit Bureau, ATTN: Managing Agent or Officer, 164 S. Main St. Madison, GA 30650." On July 12, 2011, Madison filed a proof of claim in the amount of $681.66 based on the services performed by Piedmont. Attached to the proof of claim is a Detail of Account showing a client number and the amount billed by Piedmont to the Debtors. The Debtors' Schedule F lists Piedmont as holding an unsecured nonpriority claim in the amount of $681.66.

At the hearing, the Debtors testified that since filing bankruptcy, Piedmont has contacted them numerous times in an effort to collect the debt. Specifically, Mrs. Long testified that the Debtors continue to receive collection letters and billing statements from Piedmont and Madison. She further represented that since the petition date, the Debtors have received approximately ten billing statements from Piedmont. The most recent billing statement was dated January 31, 2012. Mrs. Long testified that upon receiving each billing statement, the Debtors would notify Piedmont by phone that they were debtors in a Chapter 13 bankruptcy. Mrs. Long represented that each time they notified Piedmont of their bankruptcy status, Piedmont apologized and stated it was not aware that the they had filed for bankruptcy. At the hearing, the Court received into evidence a copy of a billing statement from Piedmont, dated January 31, 2012. The statement shows the previous balance as $691.88 with current charges in the amount of $10.38. The total amount due as of January 31, 2012, is listed as $702.26.

2

In addition to this correspondence, Mr. Long testified that approximately two weeks prior to the hearing date, he was approached by his daughter's horse trainer regarding the bankruptcy and the Motion for Sanctions. According to Mr. Long, an employee of Piedmont asked his daughter's horse trainer to talk with the Debtors about withdrawing the pending Motion for Sanctions.

The Debtors testified that during this same time period, they were in the process of surrendering their home. Mrs. Long testified that the billing statements were so excessive she suffered from traumatic stress as a result of the situation. She further testified that Piedmont's excessive contacts impacted their family life as they had to spend a great deal of time forwarding the billing statements to their attorney and making phone calls to Piedmont. The Debtors testified that they believed the filing of the bankruptcy petition protected their family from receiving collection attempts such as the communications made by Piedmont.

The Debtors allege Piedmont willfully violated the automatic stay provided by § 362 by its repeated attempts to collect on a prepetition debt. The Debtors allege they suffered emotional distress caused by the billing statements and by Piedmont speaking about their bankruptcy case to others in the horse training community.

Piedmont did not file a response to the Motion for Sanctions and did not appear at the hearing on April 24, 2012.

## **DISCUSSION**

Section 362(a) of the Bankruptcy Code imposes a stay on "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of a case under" title 11. 11 U.S.C. § 362 (a)(6). The Bankruptcy Code also provides that any "individual injured by any

3

willful violation of a stay provided by this section shall recover actual damages . . . and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362 (k)(1).

This Court has held "willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay." *Lofton v. Carolina Fin. LLC (In re Lofton)*, 385 B.R. 133, 140 (Bankr. E.D.N.C. 2008) (citing *Citizens Bank v. Strumpf*, 37 F.3d 155 (4th Cir.1994), *rev'd on other grounds* 516 U.S. 16, 11 (1995)).  Furthermore, "[i]f the creditor intentionally acts and its actions violate the automatic stay, the creditor's acts are willful." *In re Jones*, No. 06-00380-8-RDD, at 3 (Bankr. E.D.N.C. June 27, 2007).

Based on the evidence, the Court finds the Debtors proved Piedmont willfully violated § 362 by a preponderance of the evidence.  Piedmont and Madison both received proper notice of the Debtors' bankruptcy petition. Several weeks after filing the petition, the Debtors began receiving billing statements and collection letters at their address. The billing statements originally listed the account balance in the amount of $681.66.   Upon receiving each billing statement, the Debtors made contact with Piedmont to notify it that they were debtors in a Chapter 13 bankruptcy case. Piedmont's agent responded that they apologized for sending the statements and that they were not aware the Debtors had filed a Chapter 13 petition. In total, the Debtors received ten billing statements from Piedmont and made ten responsive phone calls to Piedmont.  The most recent billing statement mailed by Piedmont listed the account balance in the amount of $702.26. In addition to the numerous billing statements, Piedmont requested that the Debtors' horse trainer talk with the Debtors about possibly withdrawing the Motion for Sanctions. The Debtors testified this caused the Debtors stress and made them upset as Piedmont had discussed their bankruptcy with other members of the horse training community.

4

The Court finds Piedmont had knowledge of the Debtors' bankruptcy petition at the time the account statements were mailed and had the requisite intent to collect on a pre-petition debt in violation of 11 U.S.C. § 362(a).

The Court is not aware of whether Piedmont has a formal process for handling accounts in bankruptcy. No one on behalf of Piedmont appeared at the hearing to testify as to this matter. While it may be argued that Piedmont was unaware the automatic stay provided by the Bankruptcy Code prevented attempts to collect on pre-petition debts, this is not a defense when the Debtors contacted Piedmont on numerous occasions to inform it that they were debtors in a Chapter 13 bankruptcy.

Upon finding willful violations of the automatic stay, the Court may award actual damages, which include monetary damages "to compensate for actual emotional distress caused by a creditor's violation of the automatic stay." *In re Thorpe*, No. 11-00862-8-SWH, 2011 WL 5909403 at *2 (Bankr. E.D.N.C. May 17, 2011) (citing *In re Kirkbride*, Case No. 08-00120-8-JRL, 2010 WL 4809334 (Bankr. E.D.N.C. Nov. 19, 2010) (allowing $10,000.00 damages for humiliation and embarrassment caused by a creditor's actions)). The Court may also award punitive damages for a willful violation of the automatic stay for the purpose of causing "'a change in the creditor's behavior . . . .'" *In re Sands*, No. 10-12205C-13G, 2011 WL 3962491 at *3 (Bankr. M.D.N.C. April 1, 2011) (quoting *In re Shade*, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001)).

The Court finds § 362(k) allows for recovery of actual damages, including emotional distress. *See In re Thorpe*, No. 2011 WL 5909403 at *2; *In re Kirkbride*, 2010 WL 4809334 at *5; *Dawson v. Wash. Mut. Bank (In re Dawson)*, 390 F.3d 1139, 1148 (9th Cir. 2004). Evidence of emotional distress need not rise to the level necessary to prove intentional infliction of emotional distress or negligent infliction of emotional distress under North Carolina law. The Debtors testified

5

they both experienced increased anxiety and traumatic stress after receiving the billing statements from Piedmont when they were assured the bankruptcy petition stayed such actions by creditors. Further the Debtors testified that they became upset when others found out about this matter, as Piedmont had engaged in conversations with the Debtors' horse trainer regarding the bankruptcy and the Motion for Sanctions.

Therefore, the Court finds the Debtors proved by a preponderance of the evidence Piedmont willfully violated the automatic stay provided by § 362. The Motion for Section 362(k) Sanctions is **GRANTED**. The Debtors are entitled to actual damages in the amount of $1,000.00.

The Court also finds punitive damages are appropriate in this case. Piedmont willfully and maliciously sent ten billing statements to the Debtors and engaged the Debtors' horse trainer to request that the Debtors withdraw the Motion for Sanctions. The Debtors also informed Piedmont of their pending bankruptcy petition in response to each billing statement. Such willful and malicious disregard of the automatic stay merits an award of punitive damages. As such, the Debtors are entitled to punitive damages in the amount of $7,500.00.

The Debtors' attorneys, Jane Leah Weatherly, Esquire, and Edwin M. Hardy, Esquire, are entitled to attorneys' fees in the amount of $2,000.00. The total of $10,500.00 shall be paid to J. Jane Leah Weatherly, Esquire, and Edwin M. Hardy, Esquire, 3434 Edwards Mill Rd., Ste 112-366, Raleigh, North Carolina, 27612, on or before May 31, 2012 at 5:00 pm.

**SO ORDERED.**

**END OF DOCUMENT**